NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GISELLE POLIZZI,<br><br>      Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>      Defendant. | Civil Action No.: 14-02768<br><br>**OPINION** |

**CECCHI, District Judge.**

  This matter comes before the Court upon the cross-motions of Liberty Mutual Fire Insurance Company ("Liberty Mutual Fire") and Liberty Mutual Mid-Atlantic Insurance Company ("Liberty Mutual Mid-Atlantic") (collectively "Defendants"),[1] and Giselle Polizzi ("Plaintiff") for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 55, 57. The Court has considered the submissions made in support of and in opposition to the instant motions. *See* ECF Nos. 55-1, 57-1, 58, 60. The motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.[2] For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED**.

**I.  BACKGROUND**

  This case arises from a car accident and the resulting dispute about the proper interpretation of

---

[1] Liberty Mutual Mid-Atlantic is sued herein as Liberty Mutual Fire (collectively "Liberty Mutual"). *See* ECF No. 55-2 at 1 ("Def. SMF").

[2] The Court considers any new arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

1

an insurance policy.[3]

On March 10, 2010, Liberty Mutual Mid-Atlantic issued Personal Automobile Policy[4] No. AOU-238-288162-40 0 7 ("Mid-Atlantic Policy"), to Wilma Negron and Jose Negron-Rivera (the "Negrons"), both of whom were "named insureds." ECF No. 55-2 ¶ 1 ("Def. SMF"). The policy period was from March 10, 2010 to March 10, 2011. Id. Plaintiff was listed as a driver on the declaration page of the Mid-Atlantic Policy, but was not a "named insured." Id. ¶¶ 8, 10, 15. A 2006 BMW X3 owned by the Negrons was a listed vehicle covered by the Mid-Atlantic Policy. Id. ¶ 11.

The declaration page in the Mid-Atlantic policy established bodily injury recovery limits for insureds of $250,000 per person for accidents with uninsured (or underinsured) motorists "("UIM"). Id. ¶ 13. However, the Mid-Atlantic Policy also contains an endorsement titled "UNINSURED MOTORIST COVERAGE – NEW JERSEY" ("Endorsement"). Id. ¶ 12. This Endorsement contains a provision (*i.e.*, "Step-down Clause") which decreased the ordinary $250,000 UIM limit to $15,000 if the insured is neither a "named insured" nor a "family member" as defined by the Mid-Atlantic Policy. Id. ¶ 13. The Mid-Atlantic Policy defines "family member" as "a person related to you by blood, marriage or adoption *who is a resident of your household*. This includes a ward or foster child." Id. ¶ 16 (emphasis added). Thus, if an insured gets into an accident with an uninsured (or underinsured) tortfeasor, and they are neither a defined "family member" nor a "named insured," their $250,000 per person UIM limit drops to $15,000 per person by operation of the Step-down Clause. Id. ¶ 14.

Plaintiff alleges that on November 15, 2010, she was struck and injured by an underinsured vehicle while driving her parents' 2006 BMW X3. Id. ¶ 2. On March 14, 2013, Plaintiff alleges that

---

[3] Unless otherwise indicated, the following facts are not in dispute and are drawn from the parties' Local Rule 56.1 statements. The Court notes that if a fact is in dispute, it will be represented by citations to both parties' Local Rule 56.1 statements.

[4] There was another Personal Automobile Policy issued by Liberty Mutual Fire that Plaintiff was a "named insured" on ("Polizzi Policy"), which is not the focus of this immediate dispute. Def. SMF ¶ 18.

she learned that the tortfeasor in the accident had bodily injury insurance limits of only $100,000 with State Farm Insurance.[5] Id. ¶ 3. It is undisputed that the tortfeasor was an underinsured motorist. *See id.* Plaintiff subsequently notified Liberty Mutual that she was making a UIM benefits claim against the Mid-Atlantic Policy. Id. At the time of the accident, Plaintiff was not living in her parent's home at 16 Cindy Lane, Emerson, New Jersey (id. ¶ 9), but rather, she was residing at 143 Caesar Street, Cliffside Park, New Jersey. ECF No. 57-2 ¶ 17 ("Pl. Resp."). Additionally, in her moving brief, Plaintiff notes that "[a]fter the accident on November 15, 2010, plaintiff resided with her parents." ECF No. 57-1 at 2; *see also* ECF No. 55-6, Ex. C, Polizzi Dep. Tr. at 10:3-19 (admitting that she did not live with the Negrons on the date of the accident).[6]

The main dispute at issue in this case concerns the applicability of the Endorsement to the Mid-Atlantic Policy. Plaintiff argues that the Endorsement conflicts with the declarations found in the Mid-Atlantic Policy, where Plaintiff is listed as a driver. Pl. Resp. ¶ 14. Thus, she avers that she had a reasonable expectation to the coverage, and is thereby entitled to the $250,000 UIM limit, not the $15,000 UIM limit. Id. ¶¶ 14-15.

## II. PROCEDURAL HISTORY

The complaint in this action was filed in the Superior Court of New Jersey, Bergen County, on March 27, 2014. ECF No. 1-1. Plaintiff sought a declaratory judgment stating that Defendants shall provide the UIM benefits under the Mid-Atlantic Policy, compel Defendants to participate in UIM

---

[5] The underlying action between Plaintiff and the tortfeasor from the accident was settled for $75,000, but there was allegedly an understanding that it was for the full $100,000 available under the tortfeasor's policy "when the risk of trial and the cost of bringing five experts to Court to testify on behalf of plaintiffs were taken into consideration." ECF No. 57-1 at 5. Plaintiff alleges that Liberty Mutual Fire took no action to intercede in that action prior to the settlement. Def. SMF ¶ 4.

[6] Plaintiff's main arguments are focused on whether the Endorsement, and consequently the Step-down Clause, are applicable to her Mid-Atlantic Policy. *See* ECF No. 57-1. Nowhere does Plaintiff expressly argue that should the Endorsement apply, she would be considered a "family member," and thus be entitled to the $250,000 UIM limit as stated in the Mid-Atlantic Policy.

arbitration, or in the alternative, conform the Polizzi Policy to provide Personal Injury Protection ("PIP") benefits, increase the PIP limits on the Polizzi Policy, reimburse Empire Blue Cross Blue Shield for medical expenses, provide UIM benefits under the Polizzi Policy, and compel Defendants to participate in UIM arbitration. Id. at 3-4. The case was subsequently removed by Defendants on April 30, 2014. ECF No. 1. Defendants moved to dismiss the complaint in its entirety on June 13, 2014.[7] ECF No. 6. By order and opinion dated March 30, 2016, this Court dismissed Plaintiff's claim for relief seeking UIM benefits under the Polizzi Policy without prejudice. ECF No. 12. Plaintiff filed an amended complaint (ECF No. 13) on April 19, 2016, and Defendants filed their answer (ECF No. 18) on June 8, 2016. On April 18, 2018, an arbitration award was entered in favor of Plaintiff, and Defendants subsequently requested a trial de novo contending that the decision to award Plaintiff UIM coverage under the Mid-Atlantic Policy "has no basis in either law or equity." ECF No. 48 at 2. These cross-motions for summary judgment were filed by Defendants on September 28, 2018 (ECF No 55), and by Plaintiff on October 29, 2018 (ECF No. 57), specifically addressing this final issue.

### III.  LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986); Fed. R. Civ. P. 56(c).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party

---

[7] The motion to dismiss was administratively terminated on January 22, 2015 after this Court ordered the parties to mediation (ECF No. 10), but it was subsequently reinstated on May 11, 2015 after mediation proved unsuccessful.

has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to meet its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact . . . [the opponent must] exceed[] the 'mere scintilla' threshold.").

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248. A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468 (D.N.J. 2002). "When ruling on cross-motions for summary judgment, the court must consider the motions independently . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." *Id.* at 468–69 (citations omitted). "That one of the cross-motions is denied does not imply that the other must be granted." *Ill. Nat'l Ins. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J. 2015).

### IV.     DISCUSSION

Both motions hinge on the same legal question: are the terms of the Endorsement applicable to the Mid-Atlantic Policy? If the answer is yes, Defendants' motion will be successful; if no, Plaintiff's will be successful. For the purposes of this motion, since Plaintiff admitted she did not reside at her parents' home until after the accident, she is not a "family member" as defined by the Endorsement. *See* Def. SMF ¶ 14. Thus, the only way she will be entitled to the $250,000 UIM limit is if the Endorsement is inapplicable to the Mid-Atlantic Policy.

Defendants argue that Plaintiff is not entitled to any UIM coverage under the Mid-Atlantic Policy because the Step-down Clause contained in the Endorsement applies, which thereby reduces her available UIM limit from $250,000 to $15,000. ECF No. 55-1 at 1. That $15,000 must then be reduced by the "tortfeasor's full available policy limit," leaving nothing to be recovered. Id. at 6. Plaintiff contends that she is entitled to UIM coverage under the Mid-Atlantic Policy. ECF No. 57-1 at 1. She argues that the Step-down Clause is inapplicable here because it was in the Endorsement, it conflicts with other UIM provisions in the body of the Mid-Atlantic Policy, and it was not referenced on the declaration page. Id. As a result of these infirmities, she avers that the Defendants' attempt to change the body of the Mid-Atlantic Policy with the Endorsement (and Step-down Clause) must fail because it created ambiguity in the policy and lacked the adequate notice needed to defeat Plaintiff's reasonable expectation that she was entitled to UIM coverage pursuant to the declaration page of the Mid-Atlantic Policy. Id.

#### A.  Applicability of the Endorsement containing the Step-down Clause

It is well settled law in New Jersey that insurance policies are contracts of adhesion and are "therefore scrutinized with particularity." *Morrison v. Am. Int'l Ins. Co. of Am.*, 381 N.J. Super. 532, 537 (App. Div. 2005) (citing *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 594-95 (2001)). When conducting this analysis, courts will "giv[e] effect to the 'reasonable expectations' of the insured for the purpose of rendering a 'fair interpretation' of the boundaries of insurance coverage," resolving

6

ambiguities against the insurer. *Id.* (quoting *DiOrio v. New Jersey Mfrs. Ins. Co.*, 79 N.J. 257, 269 (1979)). The reasonable expectations of an insured party will be assessed "from the perspective of the average policyholder." *Id.* (internal citations omitted). "If the policy language is clear, the policy should be interpreted as written [as] it is not the function of the courts to rewrite the policy to make a better policy of insurance than the one purchased." *Id.* at 538 (internal citations and quotation marks omitted). If a section of a policy potentially creates ambiguity, courts should not only focus on the language of that one section, *see Werner Indus., Inc. v. First State Ins. Co.*, 112 N.J. 30, 37 (1988), but rather, attempt to read "the offending section" in the context "of the entire policy in order to determine whether harmony can be found between the alleged ambiguous language and the remainder of the policy," *Morrison*, 381 N.J. Super. at 541 (citing *Zacarias*, 168 N.J. at 603). If harmony cannot be found, ambiguity exists, and courts should do the following:

> [I]n enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding [reasonable expectations], even when that understanding contradicts the insurer's intent, if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend.

*Zacarias*, 168 N.J. at 601 (internal citations omitted).

Plaintiff analogizes her case to *Lehrhoff v. Aetna Cas. & Sur. Co.*, 271 N.J. Super. 340 (App. Div. 1994), where the court held that that the "reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page itself clearly so warns the insured." *Id.* at 347. Plaintiff also cites to *Skeete v. Dorvius*, 368 N.J. Super. 311 (App. Div. 2004), *aff'd*, 184 N.J. 5 (2005). *See* ECF No. 57-1 at 7-9. There, in holding that an insurance company's changes to a policy without proper notification violated a policyholder's reasonable expectations, the Appellate Division expressly stated that "[w]e hold that unless specific changes in the limits of coverage are noted on the declaration page, the carrier's notice of changes in coverage is inadequate." *Id.* at 319. Plaintiff contends that together, *Lehrhoff* and *Skeete* establish that since she was listed on the declaration page as a driver, she reasonably expected to have the same

protections and coverage as the "named insureds" (*i.e.*, her parents), and the Endorsement—which contains the Step-down Clause that is apparently in conflict with the declaration page—cannot defeat those reasonable expectations, especially when the declaration page contains no notice that the Endorsement alters its UIM provisions.  *See* ECF No. 57-1 at 10-11.

The court in *Morrison* pointed out that the New Jersey Supreme Court limited the holding of *Lehrhoff* in its *Zacarias* decision: "*Lehrhoff*, however, does not establish a bright line rule that the declaration page controls where important additional terms of the policy are not included on the declaration page but are reflected elsewhere." *Morrison*, 381 N.J. Super. at 539 (citing *Zacarias*, 168 N.J. at 603). In *Zacarias*, the New Jersey Supreme Court acknowledged that the declaration page is the one page that is most likely to be read, and therefore, insurers should "explore ways to incorporate as much information as may be reasonably included in the declarations sheet." *Zacarias*, 168 N.J. at 603-04. However, the court stated that "an insurance contract is not *per se* ambiguous because its declarations sheet, definition section, and exclusion provisions [*i.e.*, Step-down Clause] are separately presented." *Id.* at 603. The court recognized the usefulness of cross-referencing within policies, and that without that tool, policies would increase in length and "run the risk of making insurance policies more difficult for the average insured to understand." *Id.* Thus, when confronted with a declaration page and endorsement containing potentially contrary provisions, courts should resist a quick finding of ambiguity, and instead venture to read the two sections in harmony, if possible. *See id.*

Here, the Court finds that the terms of the Mid-Atlantic Policy are clear and unambiguous, thereby rendering the reasonable expectations doctrine inapplicable. Defendants argue that the provisions in *Morrison* that the court found to be unambiguous and therefore "immune from application of the [reasonable expectations] doctrine are either identical to or substantially identical to

the relevant provisions of the [Mid-Atlantic Policy]" here.[8] ECF No. 58 at 9. This Court agrees. The Mid-Atlantic Policy's cover page warns the policyholder in bolded print to "[p]lease read your policy *and each endorsement carefully*." ECF No. 55-5, Ex. B, Mid-Atlantic Policy at 6 (emphasis added). The policy specifically references the Endorsement by its title on the declaration page (unlike in *Morrison*, where the court did not identify if it was referenced on the declaration page). Id. at 5. Lastly, the Endorsement explicitly states in capital letters that "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." Id. at 51. Viewed as a whole, harmony can be found between the body of the Mid-Atlantic Policy and the Endorsement. *See Zacarias*, 168 N.J. at 603. As outlined above, the Mid-Atlantic Policy warns the policyholder to read the endorsements because they change the terms of the policy—as endorsements do. Had Plaintiff done so, she would have understood that the Endorsement reduces the UIM limits available to her. An average policyholder would have been alerted to the Endorsement and is thus responsible for the contents within. *See Morrison*, 381 N.J. Super. at 542 (stating that "[w]hen an insured purchases an original policy of insurance he may be expected to read it and the law may fairly impose upon him such restrictions, conditions and limitations as the average insured would ascertain from such reading") (internal citations omitted). Therefore, the terms of the Mid-Atlantic Policy are unambiguous, and thus, Plaintiff could not have reasonably expected to be entitled to the UIM limits found on the declaration page because those limits were changed by the Endorsement. *See id.* at 538 ("[I]f the policy language is clear, the policy should be

---

[8] Defendants list the following similarities: 1) the UIM limits of the Mid-Atlantic Policy are stated on the declaration page; 2) the Endorsement is only four pages long; 3) the Endorsement is titled "UNINSURED MOTORIST COVERAGE – NEW JERSEY"; 4) just above the title of the Endorsement, the following words appear in all caps (unlike the policy in *Morrison*, which was not in all caps), "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY"; 5) the Endorsement contains a Step-down Clause which lowers the UIM limit to the statutory minimum for individuals who were neither "named insureds" nor "family members" (in *Morrison*, the step-down clause merely cited to the statute, while here, the statutory limits were explicitly listed); 6) the Step-down Clause is found on page two of the Endorsement; and 7) the term "family member" is defined the same way in both policies. ECF No. 58 at 9-10.

interpreted as written.") (internal citations omitted).  The fact that the Step-down Clause was not specifically referenced on the declaration page is not fatal to Defendants' argument and Plaintiff cites to no authority that requires this; nor is it problematic that the Endorsement was not incorporated into the body of the Mid-Atlantic Policy.

The cases Plaintiff cites for support—*Lehrhoff* and *Skeete*—are both distinguishable from the instant dispute.  In *Lehrhoff*, the court found that the plaintiff had a reasonable expectation to UIM coverage because the endorsement that contained the step-down clause did not indicate that the term "family member" was a defined term (as the Mid-Atlantic Policy does), thus creating ambiguity in the policy:

> "[F]amily member" for purposes of identifying a person entitled to [UIM] coverage does not mean, as one might think, any family member, or indeed, as one might also think, any immediate family member or even any immediate family member listed on the declaration page.  It means none of these because some pages away from Part C there is a general definitions section to which Part C does not refer by cross-reference or otherwise which limits the meaning of "family member" for purposes of Part C coverage.

*See Lehrhoff*, 271 N.J. Super. at 345.  This failure to properly cross-reference to the definitions section was critical to the court's finding that the policy was ambiguous.  *See id.* at 349.  The *Lehrhoff* court also stated that at the time the policy was issued, the plaintiff was a "resident member of the insured's household," and therefore, the premium for the entire policy was calculated on that basis.  *Id.* at 349.  Here, Plaintiff concedes that she was not living at the insured's household until after the accident.  *See* ECF No. 57-1 at 2; *see also* ECF No. 55-6, Ex. C, Polizzi Dep. Tr. at 10:3-19.  Thus, the same rationale is not applicable here; Plaintiff was not a "family member" as defined by the Mid-Atlantic Policy at any time before her accident (and especially not at the time the policy was originally issued).  The Negrons' premium for the Mid-Atlantic Policy was not calculated based on Plaintiff being a "family member."  This is contrary to the plaintiff in *Lehrhoff*, who was a "family member" at the time that the policy was issued, but subsequently moved out of the residence and then got into an accident.  *Id.* at 342-43.

*Skeete* is also distinguishable. In *Skeete*, the insurance company amended the policy when the policyholder renewed it, not when it was initially issued, as was the case here. *See Skeete*, 368 N.J. Super. at 314 (noting that the policyholder received renewals at six-month intervals). Additionally, the insurance company sent the policyholder almost 200 pages of material within a two-week window. *Id.* at 314-15. The changes to the UIM provision were buried in just a few paragraphs in those 200 pages, and there was no mention of the change on the declaration page:

> [T]he manner in which Prudential notified [the policyholder] of the change in UM/UIM coverage—inundating her with almost 200 pages of documents in a two-week period, burying the change in a few unremarkable paragraphs, and failing to note the change on the declaration page—was inadequate for the average policyholder to determine that the UM/UIM coverage was amended and how the amendment would affect the policyholder.

Id. at 317. The *Skeete* court did not believe it was proper to require the policyholder to "wade through almost 200 pages of material she received in 1999, compare[] the policy page by page with the previous policy and cross-reference[]" multiple definitions. *Id.* at 319-20. Here, the Mid-Atlantic Policy contained the Endorsement when it was originally issued. *See* ECF No. 55-5, Ex. B, Mid-Atlantic Policy at 51. The policy itself is only roughly 50 pages long, compared to the 200 pages the policyholder in *Skeete* received in a two-week window. *See* id. Lastly, the Endorsement was listed by its title on the declaration page. *See* id. at 5. *Skeete* provides no support to Plaintiff's case.

Defendants' have presented sufficient evidence to demonstrate that the terms of the Endorsement should apply to the Mid-Atlantic Policy. Therefore, the Court cannot find, as a matter of law, that Plaintiff is entitled to the $250,000 UIM limit. The Court, then, denies Plaintiff's motion for summary judgment. Accordingly, since the Endorsement and Step-Down Clause are applicable to the Mid-Atlantic Policy, Plaintiff is only entitled to a UIM limit of $15,000 because she is neither a defined "named insured" nor a "family member." That $15,000 is further reduced by the tortfeasor's available policy limit of $100,000, *see Winner v. Revill*, 382 N.J. Super. 399, 404 (App. Div. 2006) (citing N.J. STAT. ANN. § 17:28-1.1), thereby leaving no UIM coverage available to Plaintiff under the

Mid-Atlantic Policy. The Court, accordingly, grants Defendants' motion for summary judgment.

### V.     CONCLUSION

For the reasons above, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED**. An appropriate order accompanies this opinion.

DATED: January 26, 2021

                                                **CLAIRE C. CECCHI, U.S.D.J.**